IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GENE O. STRODE,**

                    Plaintiff,                                  Civil No. 3:11-cv-01218-PK

          v.                                                    **FINDINGS AND**
                                                                **RECOMMENDATION**

**MICHAEL J. ASTRUE,**

                    Defendant.

PAPAK, Magistrate Judge:

          Plaintiff Gene Strode ("Strode"), seeks judicial review of the Social Security Commissioner's

final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") payments under Titles II and XVI of the Social Security Act. This court

has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed for the

1 - FINDINGS AND RECOMMENDATION

reasons that follow.

## BACKGROUND

Born in 1957 (Tr. 868), Mr. Strode alleges disability since September 12, 1988.  Tr. 868, 871

due to chronic back pain and dyslexia.  Tr. 99.  The Commissioner denied his applications initially

and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on March 19,

2009.  Tr. 880-895.  On May 21, 2009, the ALJ found Mr. Strode not disabled prior to September

16, 2007.  Tr. 27-44.  The Appeals Council accepted additional evidence into the record, but denied

review of the matter on August 5, 2011.  Tr. 11-18.  Mr. Strode challenges the ALJ's finding that

he was not disabled prior to September 16, 2007.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

to determine disability under the meaning of the Act.  20 C.F.R. §§ 404.1520; 416.930; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987).  Each step is potentially dispositive.  *Tackett v. Apfel*, 180 F.3d

1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  At step two,

the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve-month durational requirement.  If the claimant does not have such

a severe impairment, he is not disabled.  20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909;

416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an

impairment "listed" in the Commissioner's regulations.  If it does, the claimant is disabled.  20

2 - FINDINGS AND RECOMMENDATION

C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p (available at 1996 WL 374184).

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.930(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ found Mr. Strode's chronic back pain secondary to degenerative disc disease "severe" at step two in the sequential proceedings. Tr. 30. She explicitly found his cirrhosis,

hepatitis, hypertension, major depressive disorder, learning disability, and alcohol abuse non-severe. *Id.* The ALJ found that none of Mr. Strode's impairments met or equal a listed disorder at step three. Tr. 37.

The ALJ made two RFC assessments. Prior to September 16, 2007, the ALJ found that Mr. Strode retained the RFC to perform light work with "postural, environmental and vocational nonexertional limitations." Tr. 38. Specifically, she found that he could lift and carry 10 pounds frequently and 20 pounds occasionally, required a "sit-stand" option to change positions every 30 minutes as needed due to pain. Tr. 40. She also found that he had an "unlimited" capacity for sitting in an eight-hour workday, and could stand and walk up to 2 hours "cumulatively, not continuously." *Id.* His "push/pull exertional capacities" were limited in his lower extremities, and he could climb stairs and "equivalent ramps," but could not climb ropes, ladders, and scaffolding. *Id.* Mr. Strode could do no more than occasional bending, balancing, stooping, kneeling, and crouching. *Id.* Environmental limitations included restriction from "concentrated exposure to extreme vibrations, cold and heat as well as being precluded from working around hazards" such as unprotected heights or machinery. *Id.* Finally, the ALJ found Mr. Strode limited to "no more than simple, routine, unskilled type work." *Id.*

The ALJ concluded that this RFC dictated a finding of "not disabled" under the Commissioner's Medical-Vocational rules prior to September 16, 2007. Tr. 41. She also found Mr. Strode able to perform work in the national economy during this time. *Id.*

However, the ALJ concurrently found Mr. Strode's RFC to be more restricted beginning September 16, 2007. Tr. 41. After that date, she found that Mr. Strode could perform sedentary work only. *Id.* The ALJ found that this RFC precluded work in the national economy, and therefore

found Mr. Strode disabled as of September 16, 2007.  Tr. 43.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222, *quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The reviewing court, however, may not substitute its judgment for that of the Commissioner.  *Id.*, *citing Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express.  *Bray*, 554 F.3d at 1225-26, *citing SEC v. Chenery Corp.*, 332 US 194, 196 (1947); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Mr. Strode asserts that the ALJ failed to properly assess his psychological impairments at step two in the sequential proceedings, and failed to follow the Commissioner's administrative ruling pertaining to his RFC.  Consequently, he asserts he is disabled between his September 12, 1988,

alleged onset date, and the September 16, 2007, date the ALJ found his disability began.  Tr. 43.

## I.    Step Two Findings

Mr. Strode asserts that the ALJ improperly assessed his alleged ADHD, memory problems, learning disabilities, and depression at step two in the sequential proceedings. Pl.'s Opening Br. 9-10. The Commissioner responds that Mr. Strode cannot establish reversible error at step two because the ALJ "resolved the other steps in his favor." Def.'s Br. 6.   As a matter of law, the Commissioner's assertion is inaccurate.  An error at step two is harmless if the ALJ considered the alleged impairment in his subsequent analysis. *Lewis v. Apfel*, 498 F.3d 909, 911 (9th Cir. 2007). The Commissioner's indicated citation discusses an ALJ's alleged errors at steps two and three. *Burch*, 400 F.3d at 682.   However, it does not support the Commissioner's submission that a claimant "can only show prejudice from an error affecting the ALJ's step 3 or step 5 findings." Def.'s Br. 6. *Burch* establishes no such rule, and the Commissioner's reasoning should be rejected.

### A.    Legal Standards: Step Two

At step two in the Commissioner's sequential disability evaluation, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement.     20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

Step two findings must be based upon medical evidence.  20 C.F.R. §§ 404.1509(a)(ii); 416.920(a)(ii).  The Commissioner's regulations instruct that an impairment is "not severe" if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a).  The step two inquiry is a "threshold inquiry." *Yuckert*, 482 U.S. at 153.

Omissions at step two are harmless if the ALJ's subsequent evaluation considers the effect of the impairment omitted at step two. *Lewis*, 498 F.3d at 911. The effect of this harmless error doctrine is tempered by additional requirements regarding a claimant's mental impairments. An ALJ must incorporate the analysis contained in the Commissioner's Psychiatric Review Technique Form ("PRTF") into his findings regarding mental impairments at steps two and three. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011).

### B.    Analysis

The ALJ's step two analysis discussed Mr. Strode's alleged mental health impairments at considerable length. Tr. 34-37. She first noted that Mr. Strode had no history of mental health treatment or hospitalization. Tr. 34. The ALJ subsequently discussed the opinions of examining psychologists Paul Guastadisegni, Ph.D., Duane Kolilis, Ph.D., Stephen Dickerson, Ph.D., and David Gostnell, Ph.D., as well as an intake evaluation by Nurse Practitioner Sherie Chaney at Cascadia Behavioral Health ("Ex. 26F"). Tr. 34-37.

The ALJ also assessed Mr. Strode's mental impairments in light of his alcoholism. Tr. 35. She noted that the record showed Mr. Strode was drinking heavily during the time of his consultative examinations, as well as performing work activity in construction. Tr. 35. She also discussed Ninth Circuit jurisprudence relating to the materiality of drug or alcohol abuse in findings of disability, and noted that the medical sources indicated above made repeated findings of alcoholism. Tr. 35. She concluded her discussion of Mr. Strode's alcoholism at step two as follows:

> Based on the medical evidence of record . . . with the exception of when he was incarcerated . . . no evidence to demonstrate[s] that his alleged learning disorder and other myriad of alleged mental impairment (ADHD; Adjustment-Depression Disorder and Anxiety) were not the result of intoxication from his well-documented long history of persistent alcohol abuse. Tr. 35.

Following this analysis, the ALJ also discussed Mr. Strode's mental impairments under the Commissioner's PRTF analysis as directed by *Keyser*. Tr. 37. The ALJ stated she was "giving the claimant every benefit of doubt," and found that Mr. Strode's mental health symptoms caused no restriction in his activities of daily living, social functioning, concentration, persistence. Tr. 37. The ALJ also found that Mr. Strode experienced no episodes of decompensation. *Id.*

Mr. Strode now challenges the ALJ's step two findings pertaining to his alleged ADHD symptoms, depression, anxiety, and memory difficulties, and Global Assessment of Functioning ("GAF") analysis.

### 1.    ADHD Symptoms

Mr. Strode argues that he had "symptom behavior consistent with ADHD." Pl.'s Opening Br. 9. Mr. Strode originally alleged disability due to a back injury and dyslexia with associated difficulty reading and writing. Tr. 99. His initial reports of alleged impairments did not cite any limitations associated with ADHD, or any additional mental impairment. Tr. 173-81. 173-92. On June 22, 2006, Mr. Strode indicated unspecified "mental conditions," (Tr. 341), but did not identify limitations beyond difficulty reading and writing. Tr. 348. He also cited no mental limitations on appeal (Tr. 305-310), although his sister reported that he required help completing forms because he is "in a stupor." Tr. 301. Mr. Strode did not appear at his hearing before the ALJ (Tr. 882), but his counsel indicated his diagnoses of depression and his own report of a learning disorder. Tr. 884. Counsel did not discuss ADHD at the hearing before the ALJ.

The ALJ does not commit reversible error if he fails to discuss limitations a claimant does not assert where claimant is represented by counsel and does not present evidence or testimony at

8 - FINDINGS AND RECOMMENDATION

a hearing regarding the effects of his alleged impairment. *Burch*, 400 F.3d at 682. Further, this court, sitting in review, may not address arguments not raised before the ALJ. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Because neither Mr. Strode nor his counsel ever asserted limitations stemming from ADHD, Mr. Strode does not now establish error in the ALJ's findings on the matter at step two.

### 2.    Depression, Memory, and Learning Disability

Mr. Strode also argues that the ALJ erroneously failed to find limitations at step two stemming from his depression, memory difficulties, and self-reported learning disability. Pl.'s Opening Br. 9. The ALJ's RFC assessment noted unspecified nonexertional limitations, and gave "controlling weight" to Disability Determination Services ("DDS") reviewing medical source opinions dated January 11 and 12, 2005. Tr. 40. The first of the DDS opinions contained no findings addressing functional limitations. Tr. 651. The second found moderate limitation in Mr. Strode's ability to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods. Tr. 654. It also assessed moderate limitations in his ability to take precaution of workplace hazards, set realistic goals, and make independent plans. Tr. 655. No other limitations were assessed. Tr. 654-56.

Mr. Strode now specifically argues, without citation, that the DDS reviewing physicians, two treating physicians, and a psychiatric mental health nurse practitioner all described unspecified mental limitations, which the ALJ erroneously omitted at step two in the sequential proceedings. *Id.* at 10. Mr. Strode does not name the relevant medical providers or otherwise identify the evidence he relies upon in this argument. This court cannot find error at step two if the ALJ's subsequent analysis considered the alleged step two omission. *Lewis*, 498 F.3d at 911. The matter therefore

9 - FINDINGS AND RECOMMENDATION

turns upon whether the ALJ erroneously omitted limitations, which Mr. Strode does not identify, from Mr. Strode's RFC.

On November 5, 2001, DDS reviewing psychologist Dorothy Anderson, Ph.D., assessed "moderate" limitation in Mr. Strode's ability to carry out detailed instructions and be aware of occupational hazards, and no limitations in various other mental functions. Tr. 545-46.

Examining psychologist Paul Guastadisegni, Ph.D., performed an intellectual assessment of Mr. Strode on August 25, 2001. Tr. 438A-446. Mr. Strode appeared drunk and smelling of alcohol at this evaluation. Tr. 438. Dr. Guastadisegini assessed a learning disorder and borderline intellectual abilities, and rule-out diagnoses of alcohol abuse and a cognitive disorder. Tr. 444. Dr. Guastadisegni concluded that Mr. Strode's capacity to work was limited by his low IQ and "clear problems in attention and likely memory," but cautioned that further evaluation and information regarding Mr. Strode's alcohol abuse was necessary. *Id.*

A second examining psychologist, Duane Kolilis, Ph.D., evaluated Mr. Strode on April 23, 2002. Tr. 452-57. Dr. Kolilis diagnosed alcohol dependence, polysubstance dependence in partial remission by Mr. Strode's report, adjustment disorder with depressed mood, and a disorder of written expression. Tr. 456. Dr. Kolilis found Mr. Strode capable of understanding and following "at least simple 1-2 step instructions." *Id.*

A third examining psychologist evaluated Mr. Strode on July 6, 2006, while he was incarcerated (Tr. 709), and found polysubstance dependence, ADHD, and a learning disorder. Tr. 714. The examiner stated that testing showed Mr. Strode read at a fifth-grade level, and assessed no specific limitations. *Id.*

Finally, David Gostnell, Ph.D., evaluated Mr. Strode for DDS on October 6, 2008. Tr. 851-56. Dr. Gostnell diagnosed alcohol dependence, a learning disorder "by history," a pain disorder, and a rule-out diagnosis of "alcohol-induced persisting dementia." Tr. 856. Dr. Gostnell stated that testing showed problems with Mr. Strode's concentration and memory, and suggested below-average intellectual abilities. Tr. 855. Dr. Gostnell found "slight" limitation in Mr. Strode's ability to understand, remember, and carry out simple and detailed instructions, and make work-related decisions. Tr. 857. He also found "slight" restrictions in Mr. Strode's ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to work pressures and changes in routines. *Id.*

These four examinations do not establish work-related limitations omitted by the ALJ. During the period in question, before September 16, 2007, the ALJ gave the January 11 and 12, 2012 PRTF assessments and Dr. Gostnell's opinion "controlling weight." Tr. 40. Mr. Strode points to no specific evidence establishing impairment in work-related functioning beyond Dr. Gostnell's assessment of "slight" limitation. As noted, a claimant cannot establish error at step two if the ALJ adequately addressed the disputed limitation at a subsequent sequential step. *Lewis*, 498 F.3d 911. Because the ALJ's RFC for the disputed period did not omit further limitations, Mr. Strode fails to establish error in the ALJ's step two findings regarding his depression, memory, and learning disability.

### 3.     Global Assessment of Functioning Analysis

Mr. Strode also argues that the ALJ improperly cited his Global Assessment of Functioning

("GAF")[1] score at step two. Pl.'s Opening Br. 10-11. He separately challenges the ALJ's evaluation

of an opinion rendered by Sherie Chaney, PMHNP, and a GAF analysis by examining psychologist

Steven Dickinson, Psy.D., while he was incarcerated.

The ALJ assigned "little weight" to the GAF score submitted by Nurse Chaney, who

performed an intake examination at Cascadia Behavioral Healthcare on September 19, 2006. Tr. 36

(citing Tr. 824). The ALJ noted Ms. Chaney's opinion that Mr. Strode had a "strong addiction to

alcohol," and that her GAF analysis was based upon one examination only. *Id.* The ALJ may assign

lesser weight to opinions unsupported by clinical notes or findings, *Bayliss v. Barnhart*, 427 F.3d

1211, 1216 (9th Cir. 2005), and may assign greater weight to opinions based upon longitudinal

treatment. 20 C.F.R. §§ 404.1527(c)(2)(i); 416.927(c)(2)(i). The ALJ's reasoning on the matter was

based upon the correct legal standards and should not be disturbed.

The ALJ also noted that Ms. Chaney is not an "acceptable medical source" under the

Commissioner's regulations. Tr. 36. The regulations classify nurse practitioners as "other" sources.

20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Such sources may show the severity of an impairment

and its effect on a claimant's ability to work. *Id.* The ALJ's characterization of Nurse Chaney's

credentials was accurate, but this did not relieve the ALJ of his duty to consider Nurse Chaney's

observations pertaining to Mr. Strode's limitations. However, Nurse Chaney identified no specific

work-related limitations, stating only that Mr. Strode would require "support and encouragement"

to stay in mental health treatment. Mr. Strode therefore does not show that the ALJ erroneously

---

[1]The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100. It does not include impairment in functioning due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual*, 4th ed., Text Rev. (2002), 34.

omitted Nurse Chaney's opinion regarding the effect of his impairment upon his workplace abilities.

Finally, the ALJ noted that Mr. Strode told Ms. Chaney he had a third-grade education, but the record reflects that he had an eighth-grade education. Tr. 36. The ALJ may discount medical source opinions based upon testimony of a claimant found not credible, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), and the ALJ's citation to this inconsistency was therefore appropriate.

For all of these reasons, the ALJ's step two findings regarding Ms. Chaney's GAF assessment should be affirmed.

Mr. Strode also asserts that GAF scores assessed while he was incarcerated do not accurately reflect his functioning. *Id.* at 10. The ALJ's assessment of Dr. Dickinson's evaluation, made while Mr. Strode was incarcerated, did not discuss a GAF assessment. Tr. 35-36. Because the ALJ did not rely upon any GAF assessment made by Dr. Dickinson, Mr. Strode fails to establish error on this point.

Finally, Mr. Strode argues that he has difficulties in concentration, persistence, and pace, and that the GAF analysis does not capture these alleged limitations. Pl.'s Opening Br. at 10. Here he asserts, without citation, "it is reversible error for the ALJ to substitute the GAF scale for the agencies [sic] own regulations" and that no evidence "supports a conclusion that a GAF of 59 or 64 is inconsistent with disability under the Act." *Id.* at 10-11. These assertions do not establish legal error. Because Mr. Strode does not point to specific evidence showing deficiencies in concentration, persistence, and pace, this argument should be rejected.

///

13 - FINDINGS AND RECOMMENDATION

**C.    Step Two Conclusion**

In summary, Mr. Strode fails to show reversible error in the ALJ's step two findings.

**II.    The ALJ's Step Three Findings**

Mr. Strode does not initially challenge the ALJ's step three findings.[2]  The Commissioner asserts that "because the ALj resolved other steps [in the sequential disability analysis] in his favor, Plaintiff can only show prejudice from an error affecting the ALJ's step 3 or step 5 findings." Def.'s Br. 6.  The Commissioner's indicated citation addresses claimant's assertion of an argument for the first time on appeal.  *Burch,* 400 F.3d at 682.  As discussed above, the Ninth Circuit more recently instructs that omission at a preliminary step in the analysis is harmless if subsequent analysis appropriately considers the disputed impairment.  *Lewis,* 498 F.3d at 911.  Because Mr. Strode did not assert a step three argument, and because the Commissioner succeeds only in clouding the issue, the matter will not be discussed further.

**III.    Social Security Ruling 96-8p**

Finally, Mr. Strode argues that the ALJ failed to follow guidelines set out in the Commissioner's administrative ruling addressing RFC evaluations.  Pl.'s Opening Br. 11-15.

**A.    Standards**

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC.  SSR 96-8p (available at 1996 WL 374184).  The Ruling defines the RFC assessment and

---

[2]Mr. Strode purportedly addresses the Commissioner's step three argument in his reply, but instead refers to the ALJ's step two findings, which are discussed above.  Pl.'s Reply Br., 2 (citing Tr. 34-35).

14 - FINDINGS AND RECOMMENDATION

instructs the ALJ to make narrative findings in construing a claimant's RFC. *Id.* at *2, 7. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

### B.    Analysis

#### 1.    Medical Evidence

Mr. Strode's argument under SSR 96-8p first points to the medical evidence discussed above. Pl.'s Opening Br. 11-12.  As explained, Mr. Strode fails to establish reversible error regarding the ALJ's assessment of his testimony or the medical evidence in construing his RFC.  Mr. Strode cannot now rely upon the Commissioner's Administrative Ruling as a back door to again attack the ALJ's credibility analysis and review of the medical record, and this court rejects his request that it now reevaluate this evidence under SSR 96-8p.

#### 2.    Concentration, Persistence, and Pace

Mr. Strode also asserts that the ALJ's decision violates instructions contained in SSR 96-8p regarding his alleged limitations in concentration, persistence, and pace.  Pl.'s Opening Br. 12. Specifically, his argument pertaining to SSR 96-8p re-alleges that the ALJ did not "address Plaintiff's inability to concentrate or focus and remain focused on job duties in such a way as to perform with the necessary pace or persistence to perform competitive employment." *Id.*  SSR 96-8p instructs the ALJ to consider a claimant's "nonexertional capacity" in construing the claimant's RFC.  SSR 96-8p at *6 (*available at* 1996 WL 374184).  Mr. Strode provides no citation to the Commissioner's Administrative Ruling supporting his assertion. *Id.*

Mr. Strode instead asserts that a limitation to "simple, routine work" does not address his

alleged concentration difficulties. Pl.'s Opening Br. 12. However, the ALJ presently made no findings addressing simple or routine work, and this assertion is therefore without merit. Regardless, the Ninth Circuit has determined that a restriction to "simple" tasks is consistent with a "moderate" limitation in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74. Here, the ALJ found only "mild" limitations in Mr. Strode's mental work activity functioning. Tr. 40 (crediting examining psychologist opinions finding "mild" limitations). "Mild" is less restrictive than "moderate," and a restriction to "simple" tasks would remain sufficient. Because the ALJ made no finding regarding "simple" work, and because Mr. Strode's reliance upon unpublished and out-of-circuit authorities is misplaced, this argument should be rejected.

### 3. Regular and Continuing Work

In his reply brief, Mr. Strode asserts for the first time that the ALJ did not specify whether he could perform "regular and continuing work" under SSR 96-8p. Pl.'s Reply, 4. This court need not address arguments raised for the first time in a reply brief. *In Re Rains*, 428 F.3d 893, 902 (9th Cir. 2000). Regardless, the RFC assessment, by definition, encompasses work a claimant may perform on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b); 416.945(b). The ALJ therefore found that Mr. Strode could perform "regular and continuing work" with the limitations assessed in his RFC.

In summary, Mr. Strode fails to establish the ALJ erroneously evaluated his RFC pursuant to SSR 96-8p.

### CONCLUSION

In conclusion, Mr. Strode fails to show that the made erroneous step two findings, or

erroneously evaluated his RFC. The ALJ's decision is based upon the record and the correct legal standards should therefore be AFFIRMED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 21st day of September, 2012.

Paul Papak
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION